**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL C. BICZ,

    Plaintiff,

vs.

COLLIERS INTERNATIONAL GROUP, INC., PATRICH JETT, RANDALL BOOK, CHRIS L. KIRWIN, DONALD DAY, JAY G. YASSO and ELMER ROLLER,

    Defendants.
_____/

**CASE NO.: 8:17-cv-01840-EAK-TBM**

**DISPOSITIVE MOTION**

**DEFENDANT, ELMER ROLLER'S, MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**COMES NOW**, Defendant Elmer Roller, (hereinafter "Defendant" or "Mr. Roller") by and through the undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b) and 8 and hereby moves to dismiss Plaintiff's Second Amended Complaint ("SAC") filed December 28, 2017 [Doc.40] and in support thereof, states as follows:

**INTRODUCTION**

The crux of Plaintiff's claim for relief stems from an investment via a 30 month promissory note he made to AE Equities Group, LLC ("AEEG"). Based on the alleged facts of the SAC Plaintiff was coaxed by Donald Day, President of AEEG, to invest in an AEEG's plan to acquire and redevelop a shuttered Ford plant located in London, Ontario (the London Project). Sometime in October 2012, Plaintiff made a $175,000.00 investment loan to AEEG to fund the London Project. (SAC ¶¶ 74, 43(d), 44, 70) Plaintiff subsequently learned that Ford sold the London, Ontario plant to another investment group. When Plaintiff sought a refund of

his investment loan, he learned that Day misappropriated $105,000 of the loan proceeds. (SAC ¶ 74)

Plaintiff filed a five-count Complaint on August 3, 2017. [Doc. 1]. Plaintiff then filed the First Amended Complaint ("FAC") on September 21, 2017 before obtaining any summonses. [Doc. 4]. Mr. Roller moved to dismiss the FAC on or about December 1, 2017. [Doc. 12]. Plaintiff then sought leave to amend the FAC – which this Court granted – and Plaintiff filed their SAC on or about December 28, 2017. [Doc. 23]; [Doc 40]. Plaintiff has filed this action against Day and others including Mr. Roller whom Plaintiff purported relied upon in judging Day's character.

The SAC purports to assert five Florida state law causes of action against seven defendants, individually and collectively. Count I avers a cause of action for fraudulent misrepresentation. (SAC ¶¶ 74-79) (Count I of the SAC contains a numbering error) Count II avers a cause of action for negligent misrepresentation. (SAC ¶¶ 80-90) Count III avers a claim for fraud in the inducement. (SAC. ¶¶ 91-97) (The SAC contains the same numbering error as the FAC and omits a Count IV.) Count V averse a cause of action for conversion. (SAC ¶¶ 98-102) Count VI alleges a claim for breach of a fiduciary duty. (SAC ¶¶ 103-107)

For the reasons set forth more fully below, Mr. Roller respectfully moves to dismiss the SAC as Plaintiff has failed to sufficiently plead his claims for fraud and mistake, failed to state a cause of action for conversion or breach of a fiduciary duty, and has again brought forth his allegations in shotgun fashion in contravention of the Federal Rules of Civil Procedure.

**I. Legal Standard for Motion to Dismiss**

A plaintiff generally must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). If fraud is alleged, a plaintiff must

further "state with particularity the circumstances constituting fraud." *Fed. R. Civ. P* 9(b).  If a plaintiff has failed "to state a claim upon which relief can be granted," the complaint should be dismissed. *Fed. R. Civ. P* 12(b)(6).  When considering a motion to dismiss, a court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).  "[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Id.* Pleadings that offer "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted) "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

**II. Plaintiff's claims in Counts I, II, and III  based on fraud and negligent misrepresentation fail to meet the pleading standard of  Rule 9(b).**

The SAC asserts several variants of actionable fraud under Florida common law.  Count I seeks relief for fraudulent misrepresentation.  Count III purports to assert a cause of action for fraud in the inducement.  Count II avers a close variant of fraud, negligent misrepresentation. The elements of negligent misrepresentation are similar to fraud with the exception that Plaintiff need only prove the false statement was negligently made as opposed to knowingly made. See, *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *see also Kahama VI, LLC v. HJH, LLC*, 8:11-CV-2029-T-30TBM, 2013 WL 6511731, at *6 (M.D. Fla. Dec. 12, 2013). Claims of fraud and negligent misrepresentation have similar elements, which are: (1) a false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to truth or falsity; (3) the

defendant intended the false statement or omission induce the plaintiff's reliance; and (4) the plaintiff justifiably relied to his detriment. *Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009).

The general rule governing pleadings, Federal Rule of Civil Procedure 8, states only that "a short and plain statement of the claim showing that the pleader is entitled to relief" is needed. However, if there are allegations of fraud or mistake, the heightened pleading requirements of Rule 9(b) apply: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Eleventh Circuit and this District have held Rule 9(b) requirements for pleading fraud or mistake are satisfied only if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Owens-Benniefield v. Nationstar Mortgage LLC*, 8:17-CV-540-T-33TGW, 2017 WL 3149429, at *6 (M.D. Fla. July 25, 2017) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

The heightened pleading requirements of Rule 9(b) serve "an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendant against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal citations omitted). Rule 9 "ensures that the defendant has sufficient information to formulate a defense buy putting it on notice of the conduct complained of . . . [and] protects defendants from harm to their goodwill

4

and reputation." *Wagner v. First Horizon pharmaceutical Corp.*, 464 F. 3d 1273, 1277 (11th Cir. 2006).

As to Counts I, II and III of the SAC, Plaintiff has failed to authenticate his claims with factual allegations of sufficient particularity. Plaintiff avers all Defendants engaged in "wide spread fraud . . ..in order to advance their own business and financial gains" (SAC ¶ 2) Plaintiff alleges that he was first introduced to Mr. Roller on July 31, 2012 during a business meeting held in Michigan with Day, and "executives of several significant companies" (SAC ¶ 25) It is significant that Plaintiff alleges he was introduced to Mr. Roller nine months after Day offered a partnership to Plaintiff with the allure of a "6-figure salary and great wealth and the ability to rebound from the losses of the 2008 crash." (SAC ¶ 22) Moreover, Plaintiff was not introduced to Mr. Roller until more than eight months after Plaintiff relied upon the allegedly misleading 97-page "Colliers Proposal" containing a "ringing endorsement" of Day's business successes and acumen which Plaintiff claims induced him to commit to the pursuit of the London Project. (SAC ¶¶ 20, 21 and 23) Nevertheless, as to Mr. Roller specifically, Plaintiff avers that during the July 31, 2012 introductory meeting "Day's attorney confirmed that Day has a substantial track record, capability and ability to engage a pipeline of multi-million dollar projects that could benefit [Detroit Edison Energy] DTE." (SAC ¶ 25) Plaintiff generally avers that during this meeting Mr. Roller "qualified Mr. Day and AEEG *to* DTE, UM, ABB and Apex… restating much of the information in the Colliers report." (SAC ¶ 26) (emphasis added). Plaintiff does not allege Mr. Roller ever actively "qualified" Day or AEEG to him. Instead it appears that Plaintiff claims to have inferred Day's creditworthiness from statements made by Mr. Roller to other third parties.

5

Plaintiff avers vaguely that sometime "in the fourth quarter of 2012" he made a loan $175,000 to AEEG and delivered the funds to Day as trustee. (SAC ¶ 43(d))  Plaintiff avers that on October 20, 2012 Day wrote to Plaintiff enclosing a promissory note for the $175,000 loan, copies of Article of Incorporation, and a false Certificate of Good Standing for AEEG.  (SAC ¶ 44).  Plaintiff avers that he discovered that he had been defrauded sometime in August 2013, when he learned that the loan proceeds were misappropriated by Day.  (SAC ¶¶ 70, 71)

Plaintiff has failed to comply with Rule 9(b) as to his scandalous claims of fraud.  Plaintiff does not plead with particularity any false statements made by Mr. Roller during the meeting with DTE executives.  Plaintiff has failed to specify whether any such statement or statements were knowingly made to Plaintiff, as opposed to DTE executives and other non-parties. Plaintiff has failed to aver how he reasonably relied upon any such statement to his detriment.  Moreover, Plaintiff avers that during this meeting, and the dinner held after, Mr. Roller restated information contained in the Collier Proposal, which purportedly included "bold claims of Day's financial strength, his ownership of a variety of companies, investments into energy technology and professional prowess as partners and real estate developers."  (SAC ¶¶ 20, 26).  Plaintiff fails to identify with particularity any false statement existing within the Collier Proposal, which Mr. Roller had knowledge of and somehow validated to the Plaintiff.  Moreover, the SAC does not allege any facts or set of facts that would lead to a reasonable inference that Mr. Roller knew or should have known Mr. Day would misappropriate funds lent to him.

Plaintiff next avers that sometime in December 2012 Mr. Roller facilitated a meeting with Day, MGM and Wayne State University to promote the use of DTE solar equipment.  (SAC ¶ 31)  Plaintiff avers that following this meeting "MGM addressed its letter to Mr. Roller as

6

Senior VP and General Counsel of AEEG at his law office" (SAC ¶ 31). Plaintiff also avers that on February 23, 2013, Day allegedly copied Mr. Roller on a letter address to the University of Michigan. (SAC .¶ 34) . Both of these events clearly post date Plaintiff's loan to AEEG, If these events somehow induced Plaintiff to invest in AEEG, the SAC fails to establish such a causal connection.

The allegations with the SAC are insufficient to substantiate Plaintiff's accusations of fraud or negligent misrepresentation. The SAC is vague as to whether Plaintiff was privy to any conversations with Mr. Roller. Plaintiff failed to identify the date, location and substance of any false statement made by Mr. Roller, or whether it was knowingly or negligently made for the purpose of inducing Plaintiff to act to his own detriment. As to the element of inducement, SAC speaks to Day exclusively: "Day fraudulently induced Plaintiff to give contacts to him shut down a business and made Day trustee for a $175,000 IRA loan of which he misappropriated $105,000." (SAC ¶ 74)

Thus, on the above authority and identified pleading defects the SAC must be dismissed for noncompliance with Rule 9(b).

**III. The SAC fails to state a claim for conversion as a matter of law.**

In Florida, it is "well settled that conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Mayo v. Allen,* 973 So. 2d 1257, 1258 (Fla. 1st DCA 2008). However, this tort does not typically apply to debts or contractual relationships unless there was an agreement to keep the money identifiable, such as placing it an escrow account. "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (citing *Fla. Desk,*

7

*Inc. v. Mitchell Int'l, Inc.,* 817 So. 2d 1059, 1060 (Fla. 5th DCA 2002) (collecting Florida cases). "For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" *Futch v. Head,* 511 So. 2d 314, 320 (Fla. 1st DCA 1987) (quoting *Belford Trucking v. Zagar,* 243 So. 2d 646 (Fla. 4th DCA 1970)); *but see Masvidal v. Ochoa,* 505 So. 2d 555 (Fla. 3d DCA 1987) (civil theft and conversion can be asserted where a party embezzles funds from an escrow account).

Here, the SAC does not plead as set of facts establishing an agreement with Mr. Roller to protect Plaintiff's funds; which Mr. Roller breached causing a specific, identifiable loss to Plaintiff. Plaintiff does not allege Mr. Roller ever took possession of or appropriated any of the loan proceeds at issue. Thus, Plaintiff's conversion claim fails due to insufficient allegations and must be dismissed against Mr. Roller.

**IV. The SAC fails to allege sufficient fact to state a claim for breach of a fiduciary.**

Plaintiff fails to state a claim for breach of a fiduciary duty. Generally, "elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1286 (M.D. Fla. 2009) (internal citations omitted). The fiduciary duty can be express when created through a "contract or legal proceeding." *Id.* at 1287. Implied fiduciary relationships "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties" and exist where confidence is reposed by one party and a trust accepted by the other." *Id.* (internal citations omitted). To successfully plead an implied fiduciary duty the "plaintiff must allege both that the plaintiff placed trust in the defendant and the defendant accepted that trust." *Id.* (internal citations omitted).

Plaintiff avers that a fiduciary relationship was established when all the Defendants "enticed Plaintiff to join forces for purposes of embracing the Colliers Presentation, recruiting Plaintiff to abandon his efforts in Florida, to lend his expertise and assistance in the developments being pursued by the Defendants in Michigan and Canada, and otherwise soliciting Plaintiff's funds, finances, and overall wherewithal to further their own goals." (SAC ¶ 105).

The pleading deficiencies as to Plaintiff's fiduciary duty claim are apparent. Plaintiff does not allege the existence of an attorney client relationship with Mr. Roller. He does not aver having placed his trust in Mr. Roller, which trust was acknowledge and accepted by Mr. Roller as a fiduciary. The SAC is void of any allegations, which if proven would give rise to a fiduciary relationship between Mr. Roller and Plaintiff. For these very basic reasons, "Count VI" of the SAC should be dismissed.

## V. The SAC is a quintessential shotgun pleading that should be dismissed in its entirety.

Shotgun pleadings are disfavored within the Eleventh Circuit and have consistently been found to be an impediment to the judicial system. *Paylor v. Hartford Fire Insurance Co.,* 748 F.3d 1117, 1125-28 (11th Cir. 2014) (discussing "the persistence of shotgun pleading problem") *Wagner v. First Horizon Pharmacy Corp.,* 464 F.3d 1273, 1279 (11th Cir. 2006) ("such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently"). The Eleventh Circuit has acknowledged its "30 year salvo of criticism, meaning shotgun pleadings" and has outlined the four categories in which such pleadings typically fall. *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015). A shotgun pleading, of the most common type, is one that contains multiple counts where each count adopts the allegations of all preceding counts causing each

9

successive count to carry all that came before and the last count to be a combination of the entire complaint. *Id*. Another trait of a shotgun pleading is where the complaint asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants that claim is brought against. *Id.* Shotgun pleading show "unifying characteristic in that they fail to one degree or another…to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* 1323. Moreover, where plaintiff fails to distinguish actionable conduct, as between multiple defendants, or to "identify his claims with sufficient clarity to enable defendant to frame a responsive pleading", the complaint runs afoul of Rule 10(b). *Id* at n. 13-15 (citing *Cole v. United States*, 846 F.2d 1290, 1293 (11th Cir. 1988))

Plaintiff's SAC is a quintessential shotgun pleading that runs afoul of Federal Rules of Civil Procedure 8(a) and 10(b). Each count of the SAC incorporates by reference the allegations of all preceding counts. This is an obvious and fatal characteristic of the SAC. The SAC has other traits of a shotgun pleading that create an onerous burden on the defendants in their reasonable attempt to discern basis for the claims against them. Another flaw in Plaintiff's SAC is that it fails to distinguish precisely what each Defendant is alleged to have done to give them fair notice as to why they are being sued for fraud among multiple other claims asserted by Plaintiff.

The SAC contains additional pleading defects characteristic of a shotgun pleading. For instance, each count is brought against all Defendants with disregard to their unique relationship to Plaintiff or their temporal connection to making of the investment loan to AEEG. Each of the counts of Plaintiff's SAC begin with "threadbare recitals of the elements of the cause of action supported by mere conclusory statements" that "do not suffice" to state plausible claims. *See*

10

*Iqbal* 556 U.S. at 678. Counts I, II, III, V and VI of the SAC offer nothing more than an "unadorned, the defendant unlawfully harm me accusation" which is insufficient to meet the pleading requirements of Rule 8, and much less Rule 9. *Id.* 677. Without facts to substantiate each of the several claims of Plaintiff, each of the counts of the SAC do nothing more than make conclusory naked assertions of the law which are sufficient. *Twombly*, 550 U.S. 554 at 557. Defendant submits that the proper remedy for a shotgun pleading is for the Court to exercise its inherent power and order Plaintiff to replead his claims. *See Paylor*, 748 F.3d 1117 at 1127-28.

**WHEREFORE**, Defendant, ELMER ROLLER respectfully requests that this Honorable Court grant its motion and enter an Order dismissing Plaintiff's Second Amended Complaint in its entirety with prejudice for failure to state claims against Mr. Roller for: fraudulent misrepresentation, negligent misrepresentation, fraud in the inducement, conversion, and breach of a fiduciary duty, and for any and all further relief this court deems just and proper.

Respectfully submitted,

s/ Brian F. Moes
Brian F. Moes, Esquire
Florida Bar No.  39403
Charles J. Meltz, Esquire
Florida Bar No.  985491
Grower, Ketcham, Eide, Telan & Meltz, P.A.
PO Box 538065
Orlando, FL  32853-8065
Phone: (407) 423-9545
Fax:    (407) 425-7104
Email:        bfmoes@growerketcham.com
              cjmeltz@growerketcham.com
Counsel for Defendant, Elmer Roller

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 26, 2018, I served all parties who have appeared by electronically filing the foregoing document through the Court's CM/ECF system.

        /s/ Brian F. Moes
        BRIAN F. MOES, ESQUIRE
        Florida Bar No.: 39403
        CHARLES J. MELTZ, ESQUIRE
        Florida Bar No.:  985491
        Grower, Ketcham, Eide, Telan & Meltz, P.A.
        901 N. Lake Destiny Road, Suite 450
        Maitland, Florida  32751
        Post Office Box 538065
        Orlando, Florida  32853-8065
        Telephone: (407) 423-9545
        Facsimile: (407) 425-7104
        Counsel for Defendant, ELMER ROLLER
        E-Mail:   bfmoes@growerketcham.com
                    cjmeltz@growerketcham.com
                    enotice@growerketcham.com
                    aremedios@growerketcham.com
                    sforbes-torres@growerketcham.com;
                    jclinton@growerketcham.com

13208/328