UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL S. BICZ,

      Plaintiff,

v.                                Case No. 8:17-cv-1840-T-17CPT

COLLIERS INTERNATIONAL
DETROIT, LLC; PATRICH JETT;
RANDALL BOOK; CHRIS L. KIRWIN;
DONALD DAY; JAY G. YASSO; and
ELMER ROLLER,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This cause is before me on referral for consideration of motions to dismiss filed by Defendants Chris Kirwin, Patrich Jett, Randall Book, and Colliers International Detroit, LLC (Colliers). (Docs. 93, 97, 125). Plaintiff Daniel Bicz opposes these motions. (Docs. 101, 121, 128). For the reasons discussed below, I respectfully recommend that Kirwin's motion to dismiss be granted and that Jett, Book, and Colliers's motions to dismiss be granted in part and denied in part.

I.

Bicz, a Florida resident and longtime real estate developer, initiated this action in August 2017 asserting various claims arising from a failed business venture

involving the attempted purchase and repurposing of the Ford Motor Company's shuttered manufacturing plant in London, Ontario, Canada (the Ontario plant). The Defendants' motions to dismiss relate to Bicz's third amended complaint (Doc. 91), which he filed after the Court dismissed his second amended complaint as a shotgun pleading (Doc. 88). The Defendants in the suit consist of Kirwin, Jett, Book, and Colliers, as well as Donald Day, Jay Yasso, and Elmer Roller.

According to the allegations in the third amended complaint, the genesis of Bicz's involvement with the Defendants dates back to 2011. (Doc. 91 at 4). It was then that Bicz first met Day, who was the President of AE Equites Group. *Id.* At the time, Bicz was looking "to use his experience in real estate development to craft a development method for commercial real estate" that was "dedicated to green energy solutions." *Id.* at 3.

Over the course of the next year, Day—along with the other Defendants— convinced Bicz they could acquire the Ontario plant as well as several other facilities, which could then be used as "a platform for [Bicz] to shift resources to Day in order to fulfill [Bicz's] advanced energy plan and vision." *Id.* at 4. Day told Bicz that Colliers, an international real estate development, operation, and brokerage firm, was playing an active role in the project. *Id.* at 5.

In January 2012, Day provided Bicz with a copy of a ninety-seven-page proposal that Colliers had presented to Ford Motor Company in Michigan two months earlier (the Colliers Presentation) (Doc. 91-1) regarding a $274-million package to acquire the Ontario plant (Doc. 91 at 5). That proposal was presented to Ford by Jett,

2

Book, and Kirwin, all of whom were employed by Colliers.   *Id.*   According to Bicz, the proposal contained "bold claims of Day's financial strength, his ownership of a variety of companies, his investments into energy technology, and his professional prowess as a partner and real estate developer."   *Id.*

Following the Colliers Presentation, Day offered Bicz the opportunity to become a partner in the Ontario plant project and, when Bicz agreed, the two formed a company, AE Power Group, to achieve that goal.   *Id.* at 6.   Bicz then began assisting Day in pursuing financing options, exploring regulatory issues, and analyzing various development challenges.   *Id.*   For his part, Day introduced Bicz to Day's attorneys, Yasso and Roller, who arranged and participated in meetings with Bicz and others about the plan to repurpose other outdated facilities.   *Id.* at 7-9.

Bicz ultimately discovered that the plan was a fraud, but only after he had expended considerable time, money, and effort on the project.   *Id.* at 15-17.   For these alleged harms, Bicz seeks compensatory and punitive damages, among other relief.   *Id.* at 24, 31, and 37.

Bicz's third amended complaint contains thirteen counts, the first four of which are asserted against Kirwin, Jett, Book, and Colliers.[1]   (Doc. 91 at 18-43).   These

---

[1] Counts 5 through 8 are asserted against Roller and Yasso, who settled with Bicz and were dismissed from this action on August 29, 2019.   (Docs. 157, 158).   Roller and Yasso's motion to dismiss (Docs. 98, 99) was denied as moot on the same date (Doc. 159).

Counts 9 through 13 are asserted against Day, who has yet to appear in this case or otherwise respond to Bicz's allegations.   The Clerk of Court entered a default against Day on August 13, 2019 (Doc. 155), and Bicz's motion for the entry of default judgment against Day is currently pending before the Court (Doc. 156).

counts allege state-law claims for Fraudulent Misrepresentation (Count 1); Negligent

Misrepresentation (Count 2); Fraud in the Inducement (Count 3); and Breach of

Fiduciary Duty (Count 4).   *Id.*

By way of the instant motions, the Defendants seek dismissal of all of these

claims, as well as Bicz's requests for punitive damages.

II.

*Jett and Book's Motion to Dismiss (Doc. 97)*
*and Colliers's Motion to Dismiss (Doc. 125)*

Jett, Book, and Colliers's motions raise similar pleading deficiencies and are

therefore addressed together.   (Docs. 97, 125).   In short, these Defendants argue: (a)

Count 4 is subject to dismissal pursuant Rule 12(b)(6) of the Federal Rules of Civil

Procedure because it fails to allege the existence of a fiduciary relationship between

the Defendants and Bicz; (b) Counts 1 through 3 are subject to dismissal because they

fail to plead fraud with particularity as required by Rule 9(b); and (c) Bicz's demands

for punitive damages are subject to dismissal because they do not satisfy the pleading

requirements imposed under Florida law. [2]   *Id.*   Bicz disputes each of these

contentions.   (Docs. 121, 128).

*A.   Count 4 – Breach of Fiduciary Duty*

Rule 12(b)(6) permits a defendant to seek dismissal of a cause of action for

failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).

To avoid dismissal under this rule, a "'complaint must contain sufficient factual matter

---

[2] I have re-ordered the Defendants' arguments for purposes of my analysis.

4

. . . to state a claim to relief that is plausible on its face.'"  *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *petition for cert. denied*, 139 S. Ct. 807 (Jan. 7, 2019).  "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  In evaluating a plaintiff's complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.  *Jara v. Nunez*, 878 F.3d 1268, 1271-72 (11th Cir. 2018) (citation omitted).  The court, however, "afford[s] no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action."  *Franklin*, 738 F.3d at 1248 n.1 (citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As noted above, Jett, Book, and Colliers move to dismiss the breach of fiduciary duty claim alleged in Count 4.  (Docs. 97, 125).  To plead a cause of action for breach of fiduciary duty under Florida law, a plaintiff must aver: (1) "the existence of a fiduciary duty," and (2) "the breach of that duty such that it is the proximate cause of the plaintiff's damages."  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

A fiduciary duty may be expressly or impliedly created.  *Id.* at 354; *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994); *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, 2019 WL 3532024, at *4 (S.D. Fla. Aug. 2, 2019).  Those fiduciary duties "expressly created are either by contract, such as principal/agent or

attorney/client, or through legal proceedings, such as trustee/beneficiary and guardian/ward." *Capital Bank*, 644 So. 2d at 518 (citation omitted). Implied fiduciary relationships, on the other hand, "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Id.* (citation omitted).

While there is no finite, defined list of fiduciary relationships, the Florida Supreme Court has described such relationships as follows:

> The relation and duties involved need not be legal; they may be moral, social, domestic or personal. *If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.* The origin of the confidence is immaterial.

*Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (quoting *Quinn v. Phipps*, 113 So. 419, 421 (1927)).

Given the fact-specific nature of this inquiry, many courts have found that "'a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)' because it 'is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship.'" *Hansen v. Premier Aviation Holdings, LLC*, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 20, 2017) (quoting *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1304 (M.D. Fla. 2015)); *see also Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003) (per curiam) ("[T]he issue whether a fiduciary relationship exists will generally depend

upon the specific facts and circumstances surrounding the relationship of the parties and the transaction in which they are involved.").

That said, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993) (quotation and citation omitted) (affirming dismissal of counterclaim for breach of fiduciary duty), *review denied*, 634 So. 2d 629 (Fla. 1994); *see also Willis v. Fowler*, 102 Fla. 35, 51-52 (Fla. 1931); *Quinn,* 113 So. at 421.   "The analogue to this rule [ ] is that the mere fact that one party places its trust in the other does not create a fiduciary relationship absent some manifestation of recognition, acceptance, or undertaking of fiduciary duties by . . . the other party." *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *4 (M.D. Fla. Feb. 22, 2017) (granting dismissal of breach of fiduciary duty claim) (citations omitted); *see also Harris v. Zeuch*, 103 Fla. 183, 189 (1931) (finding failure to plead fiduciary relationship where claimant reposed confidence in the opposing party, but there was nothing to show that the opposing party "recognized or accepted any trust reposed in himself . . . relating to the said transaction").

Moreover, the case law in Florida makes clear that, "[i]n an arms-length transaction, there is no duty on either party to act for the benefit or protection of the other party nor to disclose facts that the other party could by its own due diligence have discovered." *Barnett Bank of W. Fla. v. Hooper*, 498 So. 2d 923, 927 (Fla. 1986) (citations omitted); *see also Herons Cove Enterprises, LLC v. Epic Consulting, Inc.*, 2008 WL

2915066, at *6 (M.D. Fla. July 25, 2008) (granting dismissal of breach of fiduciary

duty claim that failed to allege more than an arm-length transaction); *Bankest Imports,*

*Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (same).

Here, Bicz avers that a "fiduciary relationship was established when Colliers,

Book, [and] Jett . . . published the[ Colliers Presentation] and enticed [Bicz] to join

forces for purposes of embracing the Presentation, recruiting [Bicz] to abandon his

efforts in Florida, to lend his expertise and assistance in the developments being

pursued in Michigan and Canada, and otherwise soliciting [Bicz's] funds, finances,

and overall wherewithal and expertise to further their own goals."   (Doc. 91 at ¶ 82).

Other than this conclusory allegation, however, Bicz does not assert any other facts

supporting his claim that a fiduciary relationship existed between him and Jett, Book,

and Colliers.   By my review, while Bicz claims that he relied upon the representations

made in the Colliers Presentation, there is no averment that these three Defendants

exhibited a "manifestation of recognition, acceptance, or undertaking of a fiduciary

duty" with respect to Bicz.  *Scolieri*, 2017 WL 700215, at *4.   Indeed, the general

allegations in Bicz's third amended complaint—none of which are expressly

incorporated into Count 4—evidence that Bicz's communications, relationship, and

business dealings were with Day, not Jett, Book, or Colliers.   Other than formulaic

recitations of a fiduciary duty and breach of same, nothing in the third amended

complaint supports such a cause of action against Jett, Book, and Colliers.   Because

Bicz's allegations fail to present a plausible claim that a fiduciary relationship existed

between these parties, I recommend that Jett, Book, and Colliers's motions to dismiss Count 4 be granted.

### B.   Counts 1 through 3 – Pleading Fraud with Particularity

Bicz's claims for fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement sound in fraud and are therefore subject to the stringent pleading requirements set forth in Rule 9(b).[3]   That rule demands that a party asserting fraud-related claims "state with particularity the circumstances constituting [the alleged] fraud or mistake."   Fed. R. Civ. P. 9(b).   This heightened pleading requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"   *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).   As the Eleventh Circuit has explained in this regard, "[i]f Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [ ] [a] conclusory fashion . . . . [While] a plaintiff is not expected to actually *prove* his allegations," a court "cannot be left wondering whether a plaintiff has offered [nothing more than] mere conjecture."   *U.S. ex rel. Clausen v. Lab. Corp. of America, Inc.*,

---

[3] Although Bicz's claim for negligent misrepresentation does not include the word "fraud" in its title, it is nonetheless subject to the strictures of Rule 9(b).   *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (finding that claim of negligent misrepresentation "sounds in fraud" and is thus subject to Rule 9(b)'s pleading requirements); *see also Ostreyko v. B.C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. Dist. Ct. App. 1975) ("In this state, a negligent misrepresentation is considered tantamount to actionable fraud.").

290 F.3d 1301, 1313 (11th Cir. 2002); *see also W. Coast Roofing,* 287 F. App'x at 86 ("Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud.").

Notably, however, "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made." *Mizzaro v. Home Depot*, 544 F.3d 1230, 1237 (11th Cir. 2008). Indeed, the rule itself states that "'[m]alice, intent, knowledge, and other conditions of the mind may be alleged generally.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). As a result, it is sufficient for purposes of Rule 9(b) for a plaintiff "to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.*

Causes of action for fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement have nearly identical elements. To properly plead such claims, a plaintiff must allege: (1) the defendant made a false statement concerning a material fact; (2) the defendant made the false statement with knowledge of its falsity (or, in the case of negligence, made the statement without knowledge of its truth or falsity or with the constructive knowledge that it was false); (3) the defendant intended that the representation induce another to act on it; and (4) an injury resulted to the plaintiff who acted in reliance upon the representation. *Butler v. Yusem,* 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis,* 480 So. 2d 625, 627 (Fla. 1985)) (defining elements of fraudulent misrepresentation); *Plain Bay Sales, LLC v. Gallaher,* 2019 WL

10

3429137, at *5 (S.D. Fla. May 3, 2019) (citation omitted) (providing elements of negligent misrepresentation); *GEICO Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. Dist. Ct. App. 2013) (stating elements of fraud in the inducement) (citations omitted).

Additionally, in order to satisfy Rule 9(b)'s pleading standards, a plaintiff asserting claims of fraudulent and negligent misrepresentation as well as fraud in the inducement must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *McGee*, 520 F. App'x at 831 (quoting *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

Jett, Book, and Colliers summarily argue that the representations in the Colliers Presentation were made to Ford Motor Company, not to Bicz, and thus cannot form the basis for the claims alleged in Counts 1 through 3.   (Doc. 97 at 4-5; Doc. 125 at 4-5).   They fail to recognize, however, that representations need not be made directly to a plaintiff to be actionable.   Indeed, a false statement can give rise to a cause of action for fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement regardless of how the plaintiff learns of it as long as it was intended to reach the plaintiff and to have the plaintiff act upon it.   *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 947 (Fla. Dist. Ct. App. 2012) (quoting *Harrell v. Branson,* 344

11

So. 2d 604, 606 (Fla. Dist. Ct. App. 1977)), *disapproved of on other grounds by Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681 (Fla. 2015).

Bicz properly alleges as much here.  As he outlines in his response to the Defendants' motions to dismiss (Doc. 121 at 10-14, Doc. 128 at 10-13), his third amended complaint particularizes numerous allegedly false statements that were contained within the Colliers Presentation (Doc. 91 at ¶¶ 58, 64, 76).  Although the Presentation was made directly to Ford, Bicz's averments regarding the "who, what, when, where, and how of the allegedly false statements," his indirect receipt of those statements, and the requisite intent motivating the statements are sufficient to survive a motion to dismiss.  *Mizzaro*, 544 F.3d at 1237.  Accordingly, I recommend that Jett, Book, and Colliers's motions to dismiss Counts 1 through 3 be denied.

### C.   *Punitive Damages*

Jett, Book, and Colliers's final contention is that Bicz's claims for punitive damages do not satisfy the pleading requirements of Section 768.72 of the Florida Statutes.  (Doc. 97 at 7, Doc. 125 at 7).  Section 768.72 prohibits a claimant from including a punitive damages request in his complaint "unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages."  Fla. Stat. § 768.72(1).  Under this provision, a plaintiff must obtain leave from the court *before* including a prayer for punitive damages.  *Id*.

The Eleventh Circuit has held, however, that Section 768.72's procedural mandates are inapplicable in federal courts.  *Porter v. Ogden, Newell & Welch*, 241 F.3d

1334, 1340 (11th Cir. 2001).   The court reasoned in *Porter* that the pleading rules set forth in Federal Rule of Civil Procedure 8(a)(3)—which provide that a complaint must contain "a demand for the relief sought," Fed. R. Civ. P. 8(a)(3)—"preempt [Section] 768.72's requirement that a plaintiff must obtain leave from the court before including a prayer for punitive damages," *Porter*, 241 F.3d at 1340 (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), *vacated in part*, 204 F.3d 1069 (11th Cir. 2000)); *see also Bobo's Drugs, Inc. v. Total Pharmacy Supply, Inc.*, 2018 WL 2688786, at *2 (M.D. Fla. Feb. 9, 2018).   As a result, a prayer for punitive damages on a Florida law claim brought in a federal action in this Circuit is permitted as long as a plaintiff has pleaded "specific acts committed by the defendant showing intentional misconduct or gross negligence."   *Nunez v. J.P. Morgan Chase Bank, N.A.*, 2017 WL 735391, at *2 (M.D. Fla. Feb. 24, 2017) (quoting *Porter*, 241 F.3d at 1340-41).

Given my findings in section B, *supra*, that Bicz has adequately pleaded fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement, his attendant requests for punitive damages with respect to these claims are proper.   Accordingly, I recommend that Jett, Book, and Colliers's motions to dismiss such prayers for relief be denied.

III.

*Kirwin's Motion to Dismiss*
*for Lack of Personal Jurisdiction (Doc. 93)*

Kirwin, a citizen and resident of Canada, moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against him for lack of personal jurisdiction.   (Doc. 93).   In brief, Kirwin asserts that he does not have a sufficient

connection to Florida to bring him within the Court's jurisdiction under Florida's long-arm statute or to satisfy the Fourteenth Amendment's Due Process requirement that he have minimum contacts with the forum state.   *Id.* at 3-19.   In addition, with respect to the Colliers Presentation, he claims that the "corporate shield doctrine" precludes the exercise of personal jurisdiction over him based on that presentation, which—he emphasizes—was made in Michigan to a third-party (Ford Motor Company) while he was acting as a real estate broker for his employer, Colliers.   *Id.* at 20-24.   To support his jurisdictional challenge, Kirwin submits an affidavit attesting to his lack of contacts with Florida, as well as his lack of involvement with the Colliers Presentation.   *Id.* at 26-30.

While not disputing that Kirwin is a resident of Canada, Bicz responds that Kirwin was an active participant in the fraudulent scheme to induce Bicz to invest in the Ontario plant and that Kirwin's tortious conduct both was directed to Florida and resulted in harm to Bicz in Florida.   (Doc. 101).   Bicz therefore maintains that Kirwin's actions bring him within the specific jurisdiction of Florida's long-arm statute, Section 48.193(1)(a)(2), which provides personal jurisdiction over those who "commit[ ] a tortious act within the state;" that Kirwin's connection to Florida is sufficient to satisfy due process; and that the corporate shield doctrine is inapplicable to intentional torts such as those at issue in this lawsuit.   *Id.*   Like Kirwin, Bicz also submits an affidavit in support of his position.   *Id.* at 126-40.   After careful review of the matter, I find Kirwin has the better argument.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'"   *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).   "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."   *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted).   When reviewing whether a plaintiff has satisfied this standard, the court is obliged to deem all facts alleged by the plaintiff to be admitted to the extent they are uncontroverted by the defendant and to draw all reasonable inferences in the light most favorable to the plaintiff.   *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (citing *Madara*, 916 F.2d at 1514); *see also Fatt Katt Enterprises, Inc. v. Rigsby Constr., Inc.*, 762 F. App'x 746, 748 (11th Cir. 2019) (setting forth standard for directed verdict).

Where, as here, a defendant submits an affidavit in support of his jurisdictional challenge, "'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'"   *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).   If "'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'"   *Id*. (quoting *Meier*, 288 F.3d at 1269).

Whether a federal court may exercise personal jurisdiction over a nonresident defendant involves a two-step analysis. *United Techs. Corp.*, 556 F.3d at 1274 (citation omitted). First, the court must determine whether the state's long-arm statute provides a basis for personal jurisdiction. *Id*. If it does, the court must then assess whether its exercise of personal jurisdiction would comport with the Fourteenth Amendment's Due Process Clause. *Id.* "Only if both prongs of th[is] analysis are satisfied may a . . . court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514.

### A.   Step One: Long-Arm Jurisdiction under Florida Statute § 48.193

The Florida long-arm statute contemplates both general and specific jurisdiction. *Mosseri*, 736 F.3d at 1352. "General personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose," whereas specific jurisdiction focuses on a defendant's "contacts with Florida only as those contacts related to the plaintiff's cause of action." *Id*. (citations omitted).

The reach of the long-arm statute is "a question of Florida law," *Mazer*, 556 F.3d at 1274-75 (internal quotation omitted), and is to be strictly construed, *Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983) (citations omitted). Accordingly, any doubts with respect to the statute's applicability must be resolved in favor of the nonresident defendant. *Lindenau v. Lundeen*, 2018 WL 1152403, at *3 (M.D. Fla. Mar. 5, 2018) (citing *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. Dist. Ct. App. 2007)).

16

In this case, as grounds for jurisdiction over Kirwin, Bicz cites Section 48.193(1)(a)(2)'s specific jurisdictional provision.   (Doc. 101 at 13, n.1).   That statutory provision states:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . [c]ommitting a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2).

In applying this provision, "[t]he threshold inquiry that must be determined is whether the allegations of the complaint state a cause of action."   *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (citations omitted); *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010).   If the complaint does, then it must be determined whether the stated cause of action arises from the conduct alleged.   *Wendt*, 822 So. 2d at 1260.

For the same reasons outlined above in regard to Jett, Book, and Colliers's motions to dismiss, I find that Bicz fails to state a cause of action for breach of fiduciary duty against Kirwin, but that his claims for fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement are sufficiently pleaded.   Given my recommendation that Count 4 be dismissed, I address the Court's personal jurisdiction over Kirwin relative to Counts 1 through 3 only.

With respect to these counts, the question under Section 48.193(1)(a)(2)'s specific jurisdictional provision is whether the tortious conduct alleged was committed within Florida.   My resolution of that question is based on the following factual

averments gleaned from Bicz's third amended complaint (Doc. 91), Kirwin's affidavit (Doc. 93 at 26-30), Bicz's affidavit (Doc. 101 at 126-40), and the reasonable inferences derived therefrom.

Bicz is a resident and citizen of Florida, while Kirwin is a resident of Ontario, Canada, a Canadian citizen, and an employee of Colliers.   (Doc. 91 at ¶¶ 5, 9). Kirwin works at Colliers's London, Ontario, office as a licensed real estate broker, conducts no business in Florida, and has only visited Florida for personal recreation. (Doc. 93 at 26-27, 29-30).   The Collier Presentation lists Kirwin as a presenter, along with Day, Jett, and Book.   (Doc. 91-1 at 2).   The Presentation also lists Kirwin as a member of the "Acquisition Team," along with Jett and Book, who represented the prospective buyer of the Ontario plant, AE Equities Group.   *Id.* at 5.   Kirwin attests in his affidavit that he did not prepare or otherwise author the Colliers Presentation, and that he did not authorize his name to be included on the Presentation.   (Doc. 93 at 28).   He believes his name was added "solely because [he] was the local Colliers broker in London, Ontario, where the plant was located."   *Id.*   Kirwin further avers that he had no personal knowledge of Day's background or Colliers's relationship with Day, other than what his colleagues in Michigan told him.   *Id.*   He additionally asserts that he had no interaction, communication, or involvement with Bicz, other than perhaps during Bicz's walk-through of the Ontario plant and responding to an email from Bicz that Kirwin believes he received in error.   *Id.* at 28-29.

In responding to Kirwin's affidavit, Bicz reiterates many of the same facts set forth in his third amended complaint, and additionally states, "Based on my

conversations with Day, which took place while I was in Florida, it was my understanding that Colliers, Book, Jett, and Kirwin . . . were aware that I was bringing in resources for the Colliers [Presentation]."   (Doc. 101 at 129).   He does not expound upon the basis for this "understanding," however, other than to cite the fact that Kirwin's name was listed on the Presentation.   Although Bicz asserts that "Kirwin's involvement in the London[, Ontario] Project was an important validator to [Bicz]" and that "Kirwin is culpable for not even checking to see if Day had a valid company" *id.* at 137, Bicz provides no factual allegation that Kirwin had any involvement, communication, or interaction with Bicz.   To the contrary, Bicz's assertions both in his third amended complaint and his affidavit indicate that Day was the one with whom Bicz worked.   Other than Kirwin's name on the Colliers Presentation, Bicz makes no averment controverting Kirwin's assertions that he did not author or present the statements upon which Bicz claims he relied.

Under such circumstances, even construing the evidence in the light most favorable to Bicz, I find that Bicz has not made a *prima facie* showing that Kirwin committed the tortious acts as alleged.   As outlined above, the claimed torts of fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement require that Kirwin knowingly or negligently made a false statement of material fact with the intent that Bicz or another act upon such statement.   *Butler,* 44 So. 3d at 105; *Gallaher*, 2019 WL 3429137, at *5; *Hoy*, 136 So. at 651.   Here, Kirwin sufficiently refutes that he knowingly or negligently made any false statements with the requisite intent that they reach Bicz and that Bicz act upon them.   Indeed,

Kirwin's affidavit controverts Bicz's allegations that Kirwin had any involvement in such representations, let alone that he participated in the alleged scheme to induce Bicz to act.   Because Bicz fails to proffer evidence to contradict Kirwin's affidavit in any meaningful way, I find that Bicz fails to meet his burden of establishing personal jurisdiction over Kirwin under Section 48.193(1)(a)(2).

In an effort to avoid this conclusion, Bicz argues that the alleged conspiratorial nature of the Defendants' fraudulent scheme establishes personal jurisdiction over Kirwin.   (Doc. 101 at 16-17).   As Bicz correctly notes in this regard, "if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute."   *NHB Advisors, Inc. v. Czyzyk,* 95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2012) (citations omitted).

The problem with Bicz's argument is that the conspiracy theory upon which he relies does not "extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants."   *Id.* (citing *Washington v. Fla. Dep't of Children and Families,* 595 F. Supp. 2d 1291, 1295 (M.D. Fla. 2009).   A review of the third amended complaint reveals that Bicz's allegations of a conspiracy between the Defendants in this case are wholly conclusory.   Accordingly, I find they do not provide a basis for personal jurisdiction over Kirwin.

### B.      Step Two: Due Process Inquiry

Even if the Court were inclined to extend Florida's long-arm statute to capture Kirwin's alleged tortious conduct, exercising personal jurisdiction over him would violate the Fourteenth Amendment's Due Process Clause.  Due process "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 879 (11th Cir. 2018) (quoting *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007)).  These requirements aim to safeguard "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

Significant developments in federal due process law arising from the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) inform my recommendation. *See Erwin v. Ford Motor Company*, 2016 WL 7655398, at *6-7 (M.D. Fla. Aug. 31, 2016). Refocusing the courts' analyses on the contacts that the defendant—not the plaintiff— created with the forum state, *Walden* made explicit "that mere injury to a forum resident is not a sufficient connection to the forum."  571 U.S. at 289-90 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).[4]   A court considering the constraints imposed by the Due Process Clause on a forum's exercise of jurisdiction over a nonresident must

---

[4] Like the underlying causes of action here, the claims asserted by the *Walden* plaintiffs sounded in intentional tort.  *Id.* at 286.

21

therefore ask whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum." *Id.* at 284.

The answer in this case is that it does not. As set forth above, there is no factual basis on which to conclude that any part of Kirwin's alleged tortious conduct occurred anywhere in Florida. The commission of the alleged torts involved neither Kirwin's travel to Florida, his participation in any acts within Florida, his targeting of any property located in Florida, nor his direct communication with anyone in Florida. The want of "suit-related conduct" tied to Florida is evident. *See Riley v. Cardozo*, 2017 WL 2799900, at *5-6 (M.D. Fla. June 28, 2017) (dismissing claims stemming from will contest in New York, concerning real property in New York, and alleged wrongful conduct of defendants in New York for lack of constitutionally sufficient connection with Florida), *aff'd*, 2018 WL 4354561 (11th Cir. Apr. 27, 2018). As a result, I find that subjecting Kirwin to the Court's jurisdiction would not comport with the Due Process Clause.

### C. *Corporate Shield Doctrine*

In light of my findings above, I need not address Kirwin's assertion that the corporate shield doctrine prevents the Court from exercising personal jurisdiction over him. I do so in the interest of completeness, however, and conclude that Kirwin's contentions with respect to this doctrine are unavailing.

Florida's corporate shield doctrine, also known as the "fiduciary shield" doctrine, provides that "acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise

of personal jurisdiction over the employee in the forum state." *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012); *see also Doe v. Thompson,* 620 So. 2d 1004, 1006 (Fla. 1993). This doctrine, however, is inapplicable where the corporate officer commits intentional torts. *Mosseri*, 736 F.3d at 1355 (citing *Doe*, 620 So. 2d at 1006 n.1 (stating "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction")).   Because Bicz's third amended complaint alleges that Kirwin engaged in intentional torts, Florida's corporate shield doctrine does not apply here.

IV.

For the reasons outlined above, I recommend:

1.    *Defendant Patrich Jett and Randall Book's Amended Motion to Dismiss Third Amended Complaint* (Doc. 97) be granted in part and denied in part;

2.    *Defendant Colliers International Detroit, LLC's Motion to Dismiss Third Amended Complaint* (Doc. 125) be granted in part and denied in part;

3.    *Defendant Chris L. Kirwin's Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction* (Doc. 93) be granted;

4.    The Court dismiss Count 4 of the third amended complaint; and

5.    The Court dismiss Kirwin as a Defendant in this action.

Respectfully submitted this 10th day of September 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

### NOTICE OF EXPEDITED OBJECTION PERIOD

A party has SEVEN (7) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of record
Any unrepresented party